TYLER v. WILLIAMS.

1. ISSUES OUT OF CHANCERY—JURY—REAL PROPERTY—TITLE—PARTITION.—In an action for partition, where defendants set up claim of title, that question must be tried by a jury, whose verdict is final unless set aside, and it is not necessary to frame issues.
2. ASSIGNMENT.—The question of the proof of the execution of the assignment of the judgment here are immaterial issues.
3. JUDGMENT—EXECUTION—COSTS.—A JUDGMENT DEBTOR may compound the amount due him, but in 1869 could not compromise the tax costs due court officers, and this balance would keep the judgment and execution alive.
4. EXECUTION—LEVY.—An indorsement on an execution, "140 acres land Brown—12," will not constitute a levy. *Bratton* v. *Garrison*, 2 Rich., 146; *Sartor* v. *McJunkin*, 8 Rich., 451; and *Manning* v. *Dove*, 10 Rich., 595, *distinguished from this.*
5. JURY—CHARGE—LEVY.—It is the duty of the Judge to instruct the jury whether a written indorsement on an execution constitutes a levy.

Before GARY, J., May, 1897.   Affirmed.

Action for partition by Warren V. Tyler, Theodosia A.
Ott, L. Electra De Loach, and John B. Tyler v. Braxton
B. Williams and Morgan L. Gleaton.   The Judge charged
the jury as follows:

As you have gathered from the arguments in this case,
this is a case for the equity side of the Court.   One of the
defendants sets up as a defense that the estate should not be
partitioned, by reason of the fact that the plaintiffs are not
the owners of the land sought to be partitioned, but that B.
B. Williams is the owner in fee of the land.   That question
of title must be passed upon by the jury, before the equita-
ble issues can be passed upon by the Court.   You are to
pass upon the question which has been submitted to you,
which is as follows: Is B. B. Williams, the defendant, the
owner in fee of the tract of land described in the complaint,
and has B. B. Williams, the defendant, a good and valid
title thereto?   If the defendant, Williams, is the owner in
fee, the land can not be partitioned.   But if not, then the
case goes on the equity side of the Court, where the rights
of the parties are to be determined by the Court and not by
the jury.   One is said to be owner in fee of land, when he
is the absolute owner of it.   That question you are to pass
upon.   Both parties claim through a common source.   They
admit that it was originally the property of Mr. Thos. W.
Tyler.   They admit that at one time it was the absolute
property of T. W. Tyler.   Both claim through him.   The
plaintiffs claim that they are the heirs-at-law of Thomas W.
Tyler, and that the land descended to them at his death
under the statute of distributions.   The defendant, Williams,
claims that they can inherit none of that property by reason
of the fact that during his lifetime Thos. W. Tyler contracted
a debt which was put in judgment, and under execution all
the right, title, and interest of T. W. Tyler was sold and pur-
chased by his wife, and that she conveyed it to others until
it got into the hands of Williams by purchase.   This issue

depends on the validity of the sheriff's sale. If that sale was a valid sale and conveyed the interest of Mr. Tyler, then his heirs could not inherit that property, because his interest had been sold under the sheriff's deed. Your inquiry will be then: Was that a valid sale? That is the basis of Mr. Williams' title, claiming under the sheriff's deed and claiming under successive sales until it comes to him. The plaintiff's counsel request me to charge you the following propositions of law:

1. "That if the jury believe from the evidence that W. H. Wroton had accepted $500 from the judgment debtor, Thomas W. Tyler, in full settlement of judgment debt to him, any subsequent levy thereunder on property of Thomas W. Tyler would be void, and would not support a sheriff's deed." I charge you that to be good law.

2. "That the recital of levy in the sheriff's deed is not evidence of the fact, and it must be proved by other evidence." That is the law.

3. "That if the jury believe from the evidence that there was a levy on the lands of Brown, under the execution in Williams *v.* Brown and others, that it would not be lawful for the sheriff to levy on other property of the judgment debtors in that case, unless it be made to appear that the levy was insufficient or that the levy was otherwise disposed of, without satisfying the plaintiff's judgment." I cannot charge you that, not because it is not a good proposition of law, but the question of fact is a matter of record. That is what is known as documentary evidence. The Court construes documentary evidence. The words: "140 acres land Brown—12." I charge you that that is not a levy. Where the levy has been made, it is entered upon the execution, and I charge you that that entry is not sufficient to establish the fact that a levy was made. So I charge you that that proposition of law does not apply to this case.

4. "That a levy is *prima facie* a satisfaction of an execution, and the burden is on the party endeavoring to sustain a second levy, to rebut that presumption." That is a good

24—53

proposition of law if the fact of the levy had been already established, but that entry is not sufficient to establish the levy. The sheriff speaks through his record. That indorsement would not be sufficient to support the fact that a levy was made. If you find that this judgment was paid, I charge you that a sale under a judgment that has been paid, would convey no title. A judgment is the legal determination that a debt exists against the individual, and an execution is the process of the Court to enforce the payment of that debt. It is, therefore, necessary that there should be a judgment to get a sheriff's sale. The execution is to enforce the payment of that debt. If, therefore, the debt was paid, there was nothing on which the execution could operate. A forced sale could not be had to pay that which was already paid. So if there was no existing judgment, or if the execution had been satisfied, it would not support a sale. But I charge you further that if you find that there was a judgment and execution which was a lien on this property at the time, which was not paid or satisfied, although the sheriff undertook to sell under a paid execution, if at the time he undertook to make that sale there was in his office a valid execution not satisfied, the law would refer the sale back to the unsatisfied execution, and that would support the sale. Where the sheriff has a number of executions and some are void and others are not, and he sells under one that is void, and at the time there are others in his office that are not void, although the one he sold under would not support the sale, yet if there were valid executions which were liens on the property at the time, the law would refer the sale to the valid execution, and that would support a good title to the purchaser. It mattered not under which execution the sheriff sold, if at the time there were valid executions which were liens on the property existing at the time of the sale. Now it matters not as to the amount. A judgment for $50 or $60 can create as binding a lien on real estate as a greater sum.

You will see that your first inquiry would be: Was there a sale? If you find that there was not at the time a binding

execution against that property, then there could be no sale, because the execution is necessary to support the sale. It is a forced sale, and that is the authority by which the sheriff gets his right to sell. As I have already explained, it matters not under which execution he sells, if at the time he sells there is a valid binding execution against the property. Where one comes into Court to establish title to real estate, and the defendant assumes that burden in this case, the law requires him to make out a perfect claim of title, or he must show that he has been in open adverse possession for twenty years. In that case, the law would presume that he had a grant. Or he must have held adversely and continuously for a period of ten years. That would give him a good title. Or he must go back to a common source, from which both parties claim title, and then you determine which has the better title. The presumption of a grant does not run against a minor. It takes the full twenty years after the minor has attained his majority before the presumption can run against a minor. The ten years adverse possession must be continuous. If A holds for five years and sells to B, and B holds for five years, those two cannot unite their possessions to make out the statutory period of ten years. The statutory period must be continuous. In the presumption of a grant, the parties can link their possessions to make out the term of twenty years, but that presumption will not run against a minor, but must run for twenty years after his disability has ceased. The burden of proof is on the party who affirms title, B. B. Williams, and if the testimony shows you that the party from whom he traces his title, had a valid title at the sheriff's sale, then the deeds are sufficient in form to have conveyed that title to him. But if he did not get a title at the sheriff's sale and has not held adversely and continuously for ten years since the majority of the youngest of the cotenants, then his title could not accrue under adverse possession. That is the issue for you to determine. Is B. B. Williams, the defendant, the owner in fee of the tract of land described in the complaint, and has he a good

and valid title thereto? If that sheriff's sale was a valid sale, then the deeds introduced are sufficient in form to have conveyed the interest of Mrs. Tyler, who claims to have bought the interest of her husband at that sheriff's sale. But if that sale was not under a valid judgment, or if there was not a binding execution at the time of the sale, then Mrs. Tyler would not have bought anything, and could not convey anything. But if the sheriff's sale was valid and she bought the interest of her husband at that sale, then the deeds she has made to other parties would be sufficient to convey that title to the defendant.

*Mr. Samuel Dibble* and *Messrs. Moss & Lide,* for appellants, cite: *Judge should not have decided whether the indorsement on execution was a levy, but should have left it to jury:* Con., 1868, art. IV., sec. 26; Con. 1895, art. IV., sec. 26. *The indorsement was sufficient:* Rev. Stat., 2114; 8 Rich., 451; 10 Rich., 395; 1 McM., 255.

*Messrs. Raysor & Summers* and *Izlar Bros.,* contra, cite: *Issue submitted was in proper form:* Code, 274a; 21 S. C., 420; 28 S. C., 388; 22 S. C., 274; 15 S. C., 442. *Not necessary to prove assignment of judgment:* 11 Ark., 736; 62 Ala., 323; 19 Johns., 95; 7 Jones, 615; 54 Am. Dec., 368. *Defect, if any, was caused by testimony of plaintiff:* 42 S. C., 311; 6 S. C., 410; 17 S. C., 72. *Assignment not necessary to prove defendant's title:* 23 S. C., 102; 14 S. C., 487. *At most it is only collateral issue, and only slight proof is necessary:* 7 Rich., 533; 101 Pa. St., 452. *It was duty of Judge to construe indorsement on execution, and he properly held it was not a levy:* 22 S. C., 228, 469; 24 S. C., 497; 15 S. C., 10, 296; 17 S. C., 481; 19 S. C., 124; 70 Ga., 756; 65 Ga., 201. *Mere levy does not, prima facie, amount to satisfaction of judgment:* 14 Am. Dec., 695. *Rule different as to personal property:* 1 Rich., 429, 435; 2 H. Ch., 97; 2 McM., 350; 7 S. C., 228; 2 Bail., 101. *As to levy on real property:* 65 Am. Dec., 621; 91 *Id.,* 309; 97 *Id.,* 239; 58 *Id.,* 149; 57 *Id.,* 149; 43 *Id.,* 476.

Oct. 20, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This action was brought for the partition of a certain tract of land situate in Orangeburg County, the plaintiffs alleging in their complaint that they and the defendant, Williams, are seized in fee, as tenants in common of the said land, and that the defendant, Gleaton, claimed to hold a mortgage upon the interest of the said Williams in said land. The defendant, Williams, in his answer, sets up several defenses. *First.* He admits that his codefendant, Gleaton, holds certain mortgages on the real estate described in the complaint, and denies each and every other allegation contained in the complaint. *Second.* He alleges "that the plaintiffs were not, at the commencement of this action, the owners of the premises [as] alleged, or any part thereof, but that the defendant, Braxton B. Williams, was seized, as the owner in fee simple, and in the lawful possession of the said premises." *Third.* This defense need not be stated, as it is not pertinent to any question presented by this appeal, further than that it contains a denial of every allegation in the complaint "not hereinbefore specifically admitted." *Fourth.* The same may be said of this defense. *Fifth.* In this defense, it is alleged, substantially, that the plaintiffs claim as heirs at law of their father, the late Thomas W. Tyler, who departed this life intestate; that the land in question was sold by the sheriff, after the death of the said Thomas W. Tyler, under executions to enforce the payment of judgments obtained against him during his lifetime, and bid off by his widow, the mother of the plaintiffs, for the sum of $600; and she, having complied with the terms of sale, received titles for the land, which, by various intermediate conveyances, stated in detail, passed to and vested in the defendant, Williams; "that the said plaintiffs have not, nor have either or any of them, any right, title, interest or right of possession in or to said premises, or any part thereof, either as tenants in common with this defendant or otherwise," but "that the right, title, interest, and estate of the said Thomas W. Tyler

of, in, and to the said premises was duly conveyed to the predecessors and grantors of the defendant, Braxton B. Williams, in fee, as heretofore set forth;" and this defense concludes with a repetition of the general denial of each and every allegation in the complaint, except as hereinbefore specifically admitted.

The answer of the defendant, Gleaton, admits that he is the holder of certain mortgages on the land in dispute, of which he alleges that his codefendant, Williams, is the owner, and denies each and every other allegation in the complaint, except that which is specifically admitted. The other allegations in this answer need not be stated, as they are not pertinent to any question raised by this appeal. The plaintiffs filed a reply, admitting that both parties claim under Thomas W. Tyler as a common source of title, but deny the validity of the conveyances through which the defendant, Williams, traces his title from said Thomas W. Tyler. The following statement appears in the "Case:" "The case came on to be heard at the May term, 1897, before his Honor, Judge Ernest Gary, when the defendant's attorneys moved his Honor to submit to a jury the following issue: 'Is B. B. Williams, the defendant, the owner in fee of the tract of land described in the complaint, and has he a good and valid title thereto?' The attorneys for the plaintiffs moved to amend the issue by inserting the word 'sole' before the words 'owner in fee,' or by adding the words 'exclusive of any right of the plaintiffs.' His Honor refused both of these amendments, and granted the order moved by the defendants' attorneys, to which plaintiffs' attorneys duly excepted. The case was heard on said issue before his Honor and a jury, his Honor ruling that the defendants, having to maintain the affirmative of the issue, were entitled to the opening and reply."

At the close of the testimony, which is set out in the "Case," and after the argument of counsel, the Circuit Judge charged the jury as set out in the "Case" (a copy of which should be incorporated in the report of this case), where-

upon the jury returned a verdict responding to the inquiry submitted in the affirmative. The plaintiffs moved for a new trial, which was refused, and the Circuit Judge rendered his decree, approving the finding of the jury, and directing that judgment be entered dismissing the complaint with costs. Such judgment was accordingly entered, from which plaintiffs appeal upon the several exceptions set out in the record.

The first two exceptions raise the question as to whether there was error in the manner in which the issue to be submitted to the jury was framed, and in refusing to amend the same, as moved by the plaintiffs' counsel. These exceptions cannot be sustained. In the first place, there was *no* necessity to frame any issue, as the issue which the jury was called upon to try was sufficiently presented by the pleadings—and it is for this reason that we have taken the pains to set out the pleadings more fully than would otherwise have been deemed necessary. As we understand it, the rule is, that when, in an action for the partition of real estate, the defendant or defendants, as the case may be, in his or their answer, set up a claim of title, that presents an issue which must be tried by a jury unless that mode of trial shall be waived, and there is no necessity for or propriety in framing and submitting an issue of fact to the jury, for the enlightenment of the Judge's conscience, whose verdict may or may not be accepted by the trial Judge; but when the pleadings present an issue of title to real estate, that issue must be submitted to a jury, and the finding of the jury is final, unless it be set aside. The issue which was framed and submitted to the jury, without objection, except as to its phraseology, was, practically, nothing more than presenting to the jury the issue raised by the pleadings in a simple and concise form. Indeed, it was the same thing in effect as if the Judge, in commencing his charge to the jury, had stated to them, in the same form, the issue they were called upon to try. In the second place, we do not see that the plaintiffs could have suffered any detriment by

the refusal to amend the phraseology in which the issue was stated, in the manner asked for by the plaintiffs. In view of the allegations in the pleadings, the testimony in the case, and the specific instructions contained in the Judge's charge, we do not see how the jury could fail to understand that the real question in· the case was whether the defendant, Williams, had, by the sheriff's sale and the intermediate conveyances which were introduced in evidence, acquired the interest and estate of Thomas W. Tyler, the ancestor of the plaintiffs, or merely the interest of their mother, Ann C. Tyler; for it was conceded that the land originally ·belonged to Thomas W. Tyler; it was not denied that the plaintiffs were his heirs at law, and it was not denied that Mrs. Tyler had conveyed away her interest in the land, and that the same, by the intermediate conveyances, had become vested in the defendant, Williams. So that the only real question in the case was whether Mrs. Tyler acquired the interest and estate of Thomas W. Tyler in the land by her purchase at sheriff's sale, and that depended entirely upon the question whether the sheriff had any legal authority to make such sale.

The third exception imputes error to the Circuit Judge in allowing the assignment of the judgment, in the case of Wroton *v.* Thos. W. Tyler, to be introduced in evidence, "without proof of the execution of the same." It appears that the defendants' attorneys offered in evidence the judgment roll in the case of Wroton *v.* Tyler, to which no objection was interposed. The assignment in question was found in that judgment roll, marked "Filed October 24th, 1868," signed by the clerk of the court; but when that assignment, which bore date 21st of August, 1868, and was executed in the presence of two subscribing witnesses, was offered in evidence, the plaintiffs objected to the introduction of that paper "on the ground that it must be proved by one of the witnesses." The ruling of the Circuit Judge was as follows: "I have no right to say whether that paper ought to have been filed or not. It comes from

a proper source in a proper way, and I am not to say how it got into the roll. Having been marked filed by the officer of the court, I have no authority to eliminate any part of the record. The effect of it comes up hereafter." We do not understand, therefore, that the Judge made any ruling, at that time, as to the necessity for introducing one of the subscribing witnesses to prove the execution of the assignment, and nothing further was said about it during the development of the testimony, except that subsequently the plaintiffs proved by their own witness, W. H. Wroton, the plaintiff in that judgment, that he had transferred the judgment to E. B. Tyler, the son of the judgment debtor, Thos. W. Tyler, at the time, or soon after, Thos. W. Tyler had paid him $500, upon which he had released Thos. W. Tyler from further liability to him. In view of all this, it is more than doubtful whether there was any error in receiving the assignment in evidence. But we need not discuss or decide that question, for even if there was error, it was clearly harmless error. Whether the judgment had been assigned, was a wholly immaterial issue in the case; the only material issue being whether that judgment had been satisfied before the land in question was levied on and sold by the sheriff as the property of the said Thomas W. Tyler. For this reason, if there were no other, the third exception must be overruled.

The fourth exception presents what seems to be the real issue in the case, and that is, whether the sheriff had any legal authority to make the sale of the land of Thomas W. Tyler, upon which defendants rely. The undisputed facts, as presented by the record evidence in the case, are as follows: The land in question was levied on by the sheriff, under an execution issued on the judgment in favor of W. H. Wroton against Thomas W. Tyler, and was offered for sale on the 5th day of April, 1869, and bid off by Mrs. A. C. Tyler, the widow of said Thomas W. Tyler, for the sum of $600; that she complied with the terms of sale, and received titles from the sheriff. At that time there

was another execution in the sheriff's office, in the case of Barnabas Williamson *v*. John Brown, S. B. Sawyer, and Thomas W. Tyler, upon which, amongst other indorsements, are the following: "July 1st, 1867. The sheriff will levy and raise the money on this execution by salesday next. It is for a cause of action arising since the war," signed by plaintiffs' attorneys; and also the following indorsement in pencil on the back of this execution: "140 acres land, Brown, 12th;" and also the following indorsement: "Satisfied, April 5, 1869," signed by Sheriff Riggs. The plaintiffs contend that the sheriff could derive no authority to make the sale from the execution in the case of Wroton *v*. Tyler, because, as they claim, the judgment in that case had been paid before the 5th of April, 1869, when the sheriff's sale took place; and for this purpose they rely on the testimony of Wroton, to the effect that when Tyler transferred to him notes to the amount of $500, he "agreed to release him, as he was surety on the bond" upon which the judgment was based, and that he accepted those notes "in full of all claims against T. W. Tyler on account of the bond and judgment." Assuming that this would operate as a satisfaction of the judgment, so far *as the debt and interest* was concerned, it could not operate as satisfaction of the judgment, *so far as the costs* were concerned; for, under the law as it then stood, Wroton had no authority to receive or release the costs due the attorneys and other officers of the Court. Accordingly, we find from the record evidence, which is not, and cannot be, disputed, that when the sale was made on the 5th of April, 1869, the sheriff applied so much of the proceeds of the sale as was necessary for the purpose, to wit: $33.52, to the payment of the costs of that case. This balance remaining due and unpaid on the Wroton judgment was quite sufficient to authorize the sheriff to make the sale under the execution in that case. *Henderson* v. *Trimmier*, 32 S. C., 269. Now, as the jury were explicitly instructed that if there was no existing judgment, or if *the execution had been satisfied*, it would not support a

sale, and there was no question as to the existence of the Wroton judgment; and as the record evidence above referred to showed unmistakably that the execution in that case had not been satisfied before the sale, but that the balance due thereon was paid out of the proceeds of the sale of the land, the jury might very well have concluded that the execution in the Wroton case afforded the sheriff sufficient authority to make the sale, and have based their verdict upon that conclusion. If so, then the question, whether the execution in the case of Williamson *v.* John Brown, S. B. Sawyer, and Thos. W. Tyler, afforded the sheriff authority to make the sale, would become immaterial. But, as we do not know, and have no means of ascertaining, upon what view the jury based their conclusion, it will be necessary to consider the question, whether there was any error upon the part of the Circuit Judge in his charge with respect to that execution.

There is no controversy as to the two legal propositions submitted by the Circuit Judge to the jury: 1st. That where a sheriff makes a sale of real estate, nominally, under an execution which has been satisfied, or is void, and there is in his office, at the time, another valid execution which would authorize him to make such sale, then the sale may be referred to such other valid execution, and the sale may be thereby supported. 2d. That a levy indorsed upon an execution affords *prima facie* evidence of satisfaction, and unless rebutted, for example, by showing that such levy is insufficient, or had been discharged, the execution will afford no authority for the sale of property other than that levied on. These propositions being conceded by both parties, need not be further considered, and the only question is as to their application to the facts of this case. The record evidence shows that, at the time of the sale, there was another execution in the sheriff's office, in the case of Williamson *v.* Brown, Sawyer, and Tyler, which was apparently open and unsatisfied, and that it was, in fact, satisfied out of the proceeds of the sale of the land in dispute, made by the sheriff on the 5th of April, 1869,

under which defendants claim. But the plaintiffs contend that there was an indorsement on that execution which constituted a levy on the land of one of the defendants, and there being no evidence that such alleged levy was insufficient, or had been discharged or otherwise disposed of, the execution afforded no authority for the sale of the property of Tyler, one of the other defendants. The real inquiry, therefore, is whether the indorsement relied on was sufficient to constitute a levy on the land of Brown. That indorsement was made in pencil in these words: "140 acres land, Brown, 12th." We agree with the Circuit Judge, that such indorsement was altogether insufficient to constitute a levy. The statute (sec. 2114 of Rev. Stat. of 1893) provides that: "The sheriff shall make a memorandum in writing of the date of every levy, and specify the property upon which such levy has been made on the process or in a schedule thereunto annexed." To constitute a levy, therefore, four things may be done: 1st, a memorandum in writing must be made by the sheriff; 2d, this memorandum must contain the date of the levy; 3d, it must specify the property levied on; 4th, such memorandum must be made on the execution or in a schedule thereto annexed. It is very obvious that the indorsement relied on is lacking in three of these essential requirements. It is not signed by the sheriff, it is not shown to be in his handwriting, and, in fact, there is nothing to show that the sheriff made it. The fact that it appears on a record of his office amounts to nothing, as the indorsement immediately preceding was manifestly made by the plaintiffs' attorneys. Indeed, if we were at liberty to conjecture, we would be inclined to think that this pencil indorsement was made by those attorneys as an indication of the property upon which they desired the sheriff to levy. It would hardly have been made in pursuance of the instructions of the attorneys, for those instructions in their most essential part—to make the money by the next saleday—certainly were not complied with. Again, the date of the levy does not appear from the indorsement, for the figures

and letters, "12th," certainly are insufficient to show the date—the month as well as the year being wanting. Finally, it does not specify the property levied upon, for there is nothing whatever to indicate where the land referred to lies, and nothing to indicate to whom the land belonged, except the simple word "Brown," which possibly might have been regarded as sufficient but for the other defects pointed out. The cases of *Bratton* v. *Garrison*, 2 Rich., 146; *Sartor* v. *McJunkin*, 8 Rich., 451; and *Manning* v. *Dove*, 10 Rich., 395—cited by counsel for appellants to sustain the sufficiency of this indorsement to constitute a levy—have been examined, and we do not think that any of them sustain appellants' contention. In all those cases it appears that there was something in the indorsement to indicate what land was levied on—as, for instance, "levied upon the land upon which the defendant resides"—which, upon the maxim, *id certum est quod certum reddi potest*, was held sufficient. Besides, in those cases the levy was sustained, because rendered certain by the fuller description contained in the sheriff's deed. But no case has been cited, and we know of no case where the question like the one now presented has arisen—that is, where there has been no sale and no sheriff's deed, amplifying the terms of the levy, and the indorsement is relied upon as a levy sufficient to presume satisfaction.

But this exception also imputes error to the Circuit Judge in invading the province of the jury, by instructing them, as matter of fact, that no levy had been made. This does not correctly represent the charge of the Judge, for he gave them no instruction as to a matter of fact, but simply instructed them as matter of law, that the indorsement relied on was not sufficient to constitute a levy. What shall be sufficient to constitute a levy is certainly a matter of law, as the legislature has, by statute, directed what shall be done in order to constitute a levy. There may be cases in which the question would be, what has been done, in which cases there would be a question as to what has been done; but when that is ascertained, the

question of law arises, whether what has been done is sufficient to constitute a levy. In this case there was no question of fact at all—no question as to what had been done, as that appeared from the documentary evidence—and the only question was one of law, as to whether what had been done was sufficient to constitute a levy, and as to that question it was not only the right but the duty of the Judge to instruct the jury; and, as we have seen, there was no error in his instruction, the fourth exception is overruled.

The fifth exception, being in violation of the rule, is not entitled to be considered. But we may say that, under the views hereinbefore presented, it cannot be sustained.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.